

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

May 31, 1996

The Honorable Steve Holzheauser
Chair
Energy Resources Committee
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. DM-397

Re: Whether a judge may receive a fee for performing a marriage ceremony during regular office hours and use public resources in performing the ceremony (RQ-818)

Dear Representative Holzheauser:

You ask whether a judge may perform marriage ceremonies during regular office hours, using public resources that include public property and public employees, and keeping the fee he or she charges for personal use. We will first consider whether judges may keep the fees they charge for performing marriage ceremonies, and then consider the use of public resources.

The following persons are authorized to conduct marriage ceremonies:

> justices of the supreme court, judges of the court of criminal appeals, justices of the courts of appeals, judges of the district, county, and probate courts, judges of the county courts at law, courts of domestic relations and juvenile courts, retired justices and judges of such courts, justices of the peace, retired justices of the peace, and judges and magistrates of the federal courts of this state.

Fam. Code § 1.83(a)(4).

We find no statute establishing a fee for a marriage ceremony performed by a judge. Public officers are not entitled to receive extra compensation for performing their official duties prescribed by law, but this general principle does not prohibit them from charging for services that they are under no legal obligation to perform. *Moore v. Sheppard*, 192 S.W.2d 559 (Tex. 1946). In *Moore v. Sheppard*, the Texas Supreme Court addressed the disposition of fees received by clerks of the courts of civil appeals for furnishing uncertified copies of opinions of the courts, where no statute made it the clerks' duty to provide uncertified copies, or fixed fees for providing these copies, and concluded that the clerks were not required to pay the fees to the state. *Id.* at 562. Attorney General Opinion JM-22 relied on the rule stated in *Moore* to conclude that a judge of a court of record could charge a fee for conducting a marriage ceremony. The opinion stated as follows:

> Judges of courts of record are among those persons authorized
> to conduct marriage ceremonies by article 1.83 of the Family Code.

A judge is not, however, required to exercise that authority, so long as a refusal to marry particular persons is not based upon constitutionally prohibited grounds.

Attorney General Opinion JM-22 (1983) at 1. Thus, "a judge of a court of record is empowered to charge a fee for conducting a marriage ceremony." *Id.* We find no statute establishing the amount of a fee to be charged for conducting a marriage ceremony.[1] Nor do we find any provision for the disposition of such fees, except for section 154.005 of the Local Government Code, which addresses the disposition of fees for marriages performed by justices of the peace and county judges. This provision states as follows:

(a) A justice of the peace may receive, in addition to a salary, all fees, commissions, or payments for performing marriage ceremonies, for acting as registrar for the Bureau of Vital Statistics, and for acting as ex officio notary public.

(b) A county judge may receive, in addition to a salary, all fees, commissions, or payments for performing marriage ceremonies.

Local Gov't Code § 154.005; *see* Act of April 11, 1957, 55th Leg., R.S., ch. 110, § 10, 1957 Tex. Gen. Laws 231, 232; Act of May 30, 1951, 52d Leg., R.S., ch. 503, § 2, 1951 Tex. Gen. Laws 1487, 1487 (predecessor provisions to Local Government Code § 154.005). Without express authority to retain fees received for performing marriage ceremonies, a justice of the peace and a county judge would be required by law to pay the fees into the county treasury. *See* Local Gov't Code §§ 113.021, 154.003. The existence of this express provision does not mean that other judges may not retain these fees. Pursuant to *Moore*, and Attorney General Opinion JM-22, the state judges enumerated in section 1.83 of the Family Code may retain the fees they charge for performing marriages.[2]

It has been suggested that a fee received by a judge for performing a marriage is an "honorarium" within the following prohibition found in section 36.07(a) of the Penal Code:

[A] public servant commits an offense if the public servant solicits, accepts, or agrees to accept an honorarium in consideration for services that the public servant would not have been requested to provide but for the public servant's official position or duties.

---

[1]We do not address questions about the legislature's authority to provide by statute for the amount and disposition of fees to be charged by judicial officers who conduct marriages. *See Moore v. Sheppard*, 192 S.W.2d at 561 (discussing legislature's authority to enact general legislation prescribing duty of court clerks to furnish unofficial copies of court opinions and fixing amount to be charged therefor).

[2]We do not address the authority of "judges and magistrates of the federal courts of this state" to retain fees charged for conducting marriage ceremonies.

Since there is no legislative definition of "honorarium" in section 36.07(a) of the Penal Code, we will construe it according to the rules stated in the Code Construction Act, chapter 311 of the Government Code.[3]  Section 311.011 states as follows:

> (a) Words and phrases shall be read in context and construed according to the rules of grammar and common usage.

> (b) Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.

In construing a statute, we may also consider "the object sought to be obtained, the legislative history, and common law or former statutory provisions, including laws on the same or similar subjects." Gov't Code § 311.023. Section 36.07 of the Penal Code was adopted by Senate Bill 1 of the Seventy-second Legislature, a comprehensive ethics reform bill that also repealed portions of Penal Code section 36.10, which had addressed the receipt of honorariums by public servants. See Act of May 27, 1991, 72d Leg., R.S., ch. 304, § 4.03, 1991 Tex. Gen. Laws 1290, 1321-22. To determine the meaning of "honorarium" in Penal Code section 36.07, we will consider the construction of "honorarium" in the former version of Penal Code section 36.10 and the legislative history of the "honorarium" provision in Senate Bill 1.

Section 36.10 of the Penal Code sets out exceptions to the prohibitions in section 36.08 concerning gifts to a public servant performing regulatory functions and in 36.09 against offering a gift to a public servant who is prohibited by law from accepting it. From 1975 until it was amended by Senate Bill 1, section 36.10 included an exception for "an honorarium in consideration for legitimate services rendered above and beyond official duties and responsibilities." Act of June 2, 1975, 64th Leg., R.S., ch. 342, § 11, 1975 Tex. Gen. Laws 912, 916; see Attorney General Opinion MW-90 (1981) at 2 (considering whether public official may receive honorarium for delivering speech).

A few months before the legislature adopted the 1975 provision excepting an honorarium, this office considered whether an "honorarium" paid to a legislator for participating in a program of an organization would be a gift prohibited by section 36.08 of the Penal Code. Relying on dictionaries, the opinion defined "honorarium" as follows:

---

[3]The Texas Ethics Commission, authorized by section 571.091 of the Government Code to give written opinions on chapter 36 of the Penal Code, among other statues, has issued a number of ethics advisory opinions interpreting section 36.07(a) as applicable to payments in consideration for a speech that the public servant was requested to give because of his official position or duties. See Ethics Advisory Opinion Nos. 192 (1994), 150 (1993), 97 (1992), 19 (1992), 17 (1992). The Ethics Commission has also stated that section 36.07 applies to compensation received by a legislator for teaching at a state college or university, if the legislator would not have been asked to teach but for his position as a state legislator. Ethics Advisory Opinion No. 148 (1993).

> An honorarium . . . is sometimes defined as a payment or reward, usually in recognition of services on which custom or propriety forbids any fixed business price to be set. It may be a free gift or gratuitous payment, as distinguished from hire or compensation for service. The term also has been defined to include a fee for professional services. Thus, the word is commonly used to embrace both the concept of gift and of compensation.

Attorney General Opinion H-551 (1975) at 4 (citations omitted).

This definition of "honorarium" does not describe a fee paid a public officer for performing an official service. A fee of office is not "a free gift or gratuitous payment," nor is it "a fee for professional services." *See* Gov't Code § 2254.003(b) (professional fees paid by governmental entity to provider of professional services under contract). We have no basis for concluding that "custom or propriety" forbids setting a fixed fee for performing a civil marriage. In addition, the former version of section 36.10 included an exception for "a fee prescribed by law to be received by a public servant or any other benefit to which the public servant is lawfully entitled." Act of May 24, 1973, 63d Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 946.[4] In former Penal Code section 36.10, "an honorarium" was thus something different from a "fee prescribed by law . . . or any other benefit to which the public servant is lawfully entitled."

The ethics law that was revised by Senate Bill 1 already dealt with honorariums to some extent. As introduced, Senate Bill 1 prohibited a member of the legislature or a statewide officeholder from receiving any honorarium during the period from the 30th day before the convening of a legislative session through the final adjournment. S.B. 1, 72d Leg., R.S., § 3.03 (1991) (as introduced) (bill file, Legislative Reference Library). It also provided that legislators and statewide officeholders could not receive a single honorarium over $500, could not receive more than one honorarium from the same person in a calendar year, or more than one honorarium for the same event or occasion. *Id.* An "honorarium" received by a legislator could not have included a fee for performing official services, because legislators were, and are, compensated on a salary basis. *See* Tex. Const. art. III, § 24(a). Statewide officeholders are also compensated on a salary basis, *see* Gov't Code § 659.011, and do not receive fees, except of course for judges who receive fees for performing marriages and who also are "statewide officeholders." *See* Elec. Code § 1.005(19) (defining "Statewide office" as office of the federal or state government that is voted on statewide).

Although the honorarium provision was revised during the legislative process to prohibit all public servants from accepting honorariums, House Comm. on State Affairs, Bill Analysis, C.S.S.B. 1, 72d Leg. (1991), there is no indication that the meaning of

---

[4]This exception is now found at section 36.10(a)(1) of the Penal Code. The present version also excepts "any other benefit . . . for which [the public servant] gives legitimate consideration in a capacity other than as a public servant."

"honorarium" was broadened to include a fee received by an officer for performing statutorily authorized services. As enacted by Senate Bill 1, section 36.07 of the Penal Code provides as follows:

> (a) A public servant commits an offense if the public servant solicits, accepts, or agrees to accept an honorarium in consideration for services that the public servant would not have been requested to provide but for the public servant's official position or duties.
>
> (b) This section does not prohibit a public servant from accepting transportation and lodging expenses permitted under Section 305.025(b)(2), Government Code,[5] in connection with a conference or similar event or from accepting meals in connection with such an event.

Act of May 27, 1991, 72d Leg., R.S., ch. 304, § 4.03, 1991 Tex. Gen. Laws 1290, 1321-22 (italics removed) (footnote added). Transportation and lodging expenses that Senate Bill 1 permitted under section 305.025 of the Government Code consisted of

> necessary expenditures for transportation and lodging provided in connection with a conference or similar event in which the member renders services, such as addressing an audience or engaging in a seminar, to the extent that those services are more than merely perfunctory.

*Id.* § 2.14(a), 1991 Tex. Gen. Laws 1290, 1312, *amended by* Act of May 26, 1995, 74th Leg., R.S., ch. 996, § 4, 1995 Tex. Gen. Laws 4999, 5001. Thus, addressing an audience or engaging in a seminar exemplified "services that the public servant would not have been requested to provide but for the public servant's official position or duties."

The phrase "services that the public servant would not have been requested to provide but for the public servant's official position or duties" is certainly broad enough to include official services performed under authority of law, but in the vast majority of cases, fees received by public officers are set by law and allocated in accordance with law. It is difficult to see why section 36.07 of the Penal Code would need to reach such fees. Furthermore, the use of the term "honorarium" to describe payment for these services convinces us that section 36.07 does not reach official services. By the time Senate Bill 1 was introduced, this office had given the term "honorarium" a definition that did not apply to fees received by public officers for performing official services. The legislative history of Senate Bill 1 indicates that the legislature, in prohibiting public servants from receiving honorariums, did not have in mind fees received by public officers for performing official

---

[5]A 1993 amendment to section 36.07(b) of the Penal Code deleted "permitted under Section 305.025(b)(2), Government Code," and inserted "in which the public servant renders services, such as addressing an audience or engaging in a seminar, to the extent that those services are more than merely perfunctory." Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3589, 3664.

services. We conclude that a fee received by a judge for performing a marriage is not an "honorarium" within section 36.07 of the Penal Code.

We turn to your question. You are concerned about the authority of judges to perform marriage ceremonies during regular office hours using public resources, including public property and public employees, keeping the fee they charge for their personal use. You specifically ask whether "an elected official or employee of the State, County, or Municipal Government [may] use for private profit or benefit to himself, any property, supplies, equipment, or other thing of value belonging to the State, County, or Municipality?"

You ask a general question, and our answer must necessarily be general. We believe your question raises article III, sections 51 and 52 of the Texas Constitution, which prohibit the allocation of public funds and other public resources to private purposes. *See State v. City of Austin*, 331 S.W.2d 737 (Tex. 1960). These constitutional provisions do not deny the legislature the use of state funds to carry out state purposes. *State v. City of Dallas*, 319 S.W.2d 767 (Tex. Civ. App.--Austin 1958), *aff'd sub nom. State v. City of Austin*, 331 S.W.2d 737 (Tex. 1960). The legislature has determined that there is a state purpose in authorizing and documenting the marriage relationship, as shown by the statutes it has enacted to carry out that purpose. *See* Fam. Code ch. 1, subchs. A (application to county clerk for marriage license), D (ceremony and return of license to county clerk), ch. 2 (validity of marriage); Health & Safety Code § 194.001 (filing of copy of completed marriage license application with Board of Health). The legislature has also adopted statutes concerning the various rights, duties, and liabilities that result from the status of marriage. Fam. Code chs. 4 (rights, duties, powers, and liabilities of spouses), 5 (marital property).

In conducting a marriage ceremony, a judge acts in the name, and under the authority of, the state of Texas, and not in a private capacity. *See* Attorney General Opinion JM-1 (1983) at 1. Fees received for conducting a marriage ceremony constitute the judge's compensation for carrying out an official function, not for engaging in a private business. The judge may, consistently with article III, sections 51 and 52, perform marriages during normal business hours and receive fees for that purpose. *See* Attorney General Opinion JM-22 (1983) at 2 (concluding that judge of court of record who received state salary could receive fees for performing marriage ceremonies in public building between eight a.m. and five p.m.). Any use of public resources, including the judge's and employees' time, must be reasonable in relation to the official function that is being carried out. For example, section 1.84 of the Family Code requires the person who conducts the ceremony to sign and return the license to the county clerk who issued it. Presumably, the judge could sign it and direct an employee to mail it to the county clerk. Finally, we note that judges have many mandatory duties in addition to the discretionary authority to marry people, and that they must faithfully execute the duties of office, in compliance with their oaths of office. *See id.* (judge may be removed for neglect of duty).

## S U M M A R Y

In performing a marriage ceremony as authorized by section 1.83 of the Family Code, a judge is carrying out an official function. The judge may perform marriages during the hours of eight a.m. to five p.m., as well as at other times, and keep the fees charged for doing so. Such fees are not "honorarium[s]" within the prohibition found in section 36.07(a) of the Penal Code. Any allocation of public resources, including the judge's and employee's time, to the conduct of marriages must be reasonable in relation to the official function that is being carried out.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General